589 So.2d 629 (1991)
Roy GUILBEAUX and Joann Guilbeaux, Plaintiff-Appellant,
v.
LAFAYETTE GENERAL HOSPITAL & Deborah Best, Defendants-Appellees.
No. 90-561.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
Rehearing Denied December 16, 1991.
*630 Joseph A. Koury, S. Abraham, Lafayette, for plaintiff/appellant.
Voorhies & Labbe, Wm. M. Bass, Lafayette, for defendants/appellees.
Before FORET, LABORDE and KING, JJ.
FORET, Judge.
This is a medical malpractice case.
Plaintiffs, Roy Guilbeaux and his wife, Joann Guilbeaux, filed suit against Lafayette General Hospital and Deborah Best, an employee of the hospital, for damages sustained as a result of medical malpractice performed at said hospital. After trial on the merits, the trial judge awarded Mr. Guilbeaux $50,000 in general damages and $1,000 for his loss of consortium. Mrs. Guilbeaux was awarded $1,000 for loss of consortium.
Roy Guilbeaux appeals the general damage and loss of consortium awards as being inadequate. Mrs. Joann Guilbeaux has not appealed. Defendants have answered the appeal, urging this Court to reverse the trial court on the liability/causation issue, and alternatively, that the judgment in favor of plaintiffs should be reversed. We affirm the judgment of the trial court as amended.

FACTS
In April, 1987, Roy Guilbeaux, then 63 years old, was diagnosed with spinal stenosis, the narrowing of the spine and degenerative disc disease. A CT scan revealed the possibility of a herniated disc. Dr. Richard Leoni performed a total laminectomy at the L3-4-5 level, a partial laminectomy at the L2 level and foraminotomies at L2-3, L3-4, L4-5, and L5-S1 bilaterally. The surgery took place at Lafayette General Hospital on April 13, 1987. During surgery, Dr. Leoni specifically looked for a herniated disc and none was observed.
A Jackson-Pratt drain was then placed in Mr. Guilbeaux's back by Dr. Leoni to drain the excess blood away from the surgical wound. After several days of recovery, Dr. Leoni ordered Deborah Best, defendant, the floor nurse on duty, to remove the drain.
The plaintiff was discharged on April 20, 1987, but was complaining to Dr. Leoni a month later of pain in his back, left hip, and left leg. His pain increased and worsened with time until October, 1987, when Dr. Leoni referred Mr. Guilbeaux to Dr. Thomas Butaud for a second opinion. New x-rays taken by Dr. Butaud revealed that a 3.5 inch strip of Jackson-Pratt tube had been left in Mr. Guilbeaux's back approximately one-fourth inch from the nerve sac.
Mr. Guilbeaux subsequently underwent surgery on October 7 to remove the drain tube. Dr. Leoni performed the operation upon which the tube was found to be encased in scar tissue, but there was no infection at the tube site.
Plaintiff's pain persisted and a subsequent bone scan and myelogram were performed wherein it was noted there appeared to be some nerve root impingement at the L5-S1 level. Thereafter, on September 7, 1988, Dr. Leoni performed another major surgery on Mr. Guilbeaux, wherein he removed a large herniated disc at the L4-5 area and at the L5-S1 area with foraminectomies at those and other levels. On September 16, 1988, Dr. Leoni noted *631 that Mr. Guilbeaux was having minimal pain with some foot burning.
In addition to his back problems, and that which was caused by the tube being left in his back post surgery, Mr. Guilbeaux had also had an impotency problem since before the surgery. However, hormone treatments under the care of a urologist, Dr. Al Beacham, alleviated the impotency. In August of 1988, Mr. Guilbeaux again saw Dr. Beacham, complaining of complete impotency since April of 1987, the date of the first surgery. Dr. Beacham performed two penile implants as a result of the total impotency. Dr. Beacham testified that Mr. Guilbeaux was now totally impotent and that "neurologically, the ability to obtain an erection has a big neurogenic component, and I would think probably that all that back manipulation further diminished his ability to obtain an erection."
Plaintiff submitted his claims against Deborah Best and Lafayette General Hospital to a medical review panel. The panel concluded that Deborah Best and Lafayette General Hospital had "deviated from the standard of care." However, the same panel found that there was no causation between the conduct and Mr. Guilbeaux's claims of pain and suffering due to the subsequent herniated disc or impotency.
The case was tried on the merits, after which judgment was rendered and signed December 1, 1989. In the judge's reasons for judgment, he stated:
"As to the plaintiff's herniated disks, the Court finds that the plaintiffs proved by a preponderance of the evidence that, but for the drain in the plaintiff's back, ROY GUILBEAUX probably would not have had two (2) herniated disks. Dr. Leoni's conclusion as to causation is unrebutted and the Court accepts as fact his determination. The Court finds that the plaintiff had a pre-existing back condition disposing him to back pain and potential disk problems, but that the defendants' negligence aggravated his condition and caused his herniated disks."
We cannot conclude, based upon the facts solicited from the record, that the general damage award of $50,000 is adequate to compensate the plaintiff for his past and future pain and suffering caused by defendants' negligence. We therefore find the general award to be an abuse of the trial court's discretion for the following reasons, and that an award of $200,000 in general damages is appropriate based on the evidence.
Mr. Guilbeaux testified that although he'd had back pain which first led him to seek medical attention and undergo the first surgery on April 13, 1987, his back pain following the surgery was "getting so bad thatI couldn't live with it." He testified that the pains suffered subsequent to the surgery were worse than the pains he suffered prior to April of 1987. Mr. Guilbeaux further testified that the back pain worsened after surgery for removal of the drain. This led to another operation to correct a ruptured disc. Since then, Mr. Guilbeaux testified that the pain is "getting worse all the time" to the extent that some days he cannot walk. Mr. Guilbeaux's back problems further exacerbated an impotency condition that had been treated satisfactorily before the surgeries. Mr. Guilbeaux ended up with a penile implant due to total impotency. The implant "just hasn't worked" according to his testimony, "from my back hurting so much." The medical records and the testimony of Mr. Guilbeaux's neurosurgeon and neurologist support Mr. Guilbeaux's claims. After the surgery on April 13, he continued to see Dr. Leoni for hip aches and low back pain on May 28, 1987, June 25, 1987, July 23, 1987, August 27, 1987, and September 24, 1987. Subsequent to the surgery to remove the drain tube, Dr. Leoni testified, and the record reveals, Mr. Guilbeaux was treated on October 9, 1987, October 15, 1987, November 17, 1987, December 8, 1987, and January 5, 1988. Mr. Guilbeaux still has pain in his back and hips and continues to suffer from foot burning. Dr. Leoni estimated Mr. Guilbeaux's permanent physical impairment to be 10% to 15% total body disability.
Dr. Beacham, Mr. Guilbeaux's urologist, testified that since the multiple back surgeries, Mr. Guilbeaux was now totally impotent. *632 When asked to give an opinion as to the medical cause of Mr. Guilbeaux's complaints of total impotency, Dr. Beacham testified as follows:
Q. Doctor, can you give the Court in opinion with reasonable medical certainty as to whether or not the surgery of April 1987 and subsequent surgeries through September of 1988 would have had a causal relationship to his complete impotency, more or less, or made his impotency aggravated or worse as a result of these surgeries?
A. I can give an opinion; I can't give a definite statement. He had partial impotence, and subsequent to these multiple back surgeries he was completely impotent. And neurologically, the ability to obtain an erection has a big neurogenic component, and I would think probably that all that back manipulation further diminished his ability to obtain an erection.

QUANTUM MODIFICATION
We conclude that the general damage award made by the trial court was inadequate. Considering the case of Myers v. Ford Motor Company, 486 So.2d 1030 (La. App. 2 Cir.1986), and the cases cited therein, we conclude that $200,000 for general damages is the lowest amount which could reasonably be awarded for the herniated lumbar disc surgery, where plaintiff suffered a permanent impairment of physical ability and continues to suffer back pain, as well as the resulting total impotency.
We recast the judgment appealed to reflect the award we have made:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Roy Guilbeaux, and against defendants, Lafayette General Hospital and Deborah Best, jointly, individually, and in solido in the sum of Two Hundred Twelve Thousand, Six Hundred Fifty-Two and 36/100 ($212,652.36) Dollars, with legal interest thereon from date of judicial demand until paid.
In all other respects, the judgment appealed is affirmed at appellees' costs.
AFFIRMED AS AMENDED.